WILLIAM P. BRADSHAW, Admr.

*v.*

AMOS ATKINS.

*Filed at Mt. Vernon June 13, 1884.*

1.    MISTAKE—*in the description of land in a lease—may be corrected in equity.*    Where a mistake is made in the description of land leased, in drawing the lease, and it is clear what property was in fact leased, the lessee will have a clear right against the lessor to have the mistake corrected; and so will one succeeding to his rights by purchase of the leasehold property under execution against the lessee.

2.    SAME—*correction of misdescription of land in sheriff's deed, and in the levy, etc.*    While it is true that a court of equity may have no jurisdiction to correct a mistake in the description of land in a levy indorsed upon an execution and in the certificate of sale, for the reason there is a remedy at law by motion, yet when the same mistake occurs in the sheriff's deed to the

purchaser, and in the deed of the premises to the judgment debtor, a court of equity will have jurisdiction, and may correct such mistake in not only the deeds, but also in the levy, etc.

3. SAME—*reforming deed of married woman for mistake—since the act of 1869.* Prior to March 27, 1869, a mistake in a deed or conveyance of land by a married woman could not be corrected, nor could her contracts respecting her lands be specifically enforced in equity; but since the passage of the act of that date the deeds, contracts and other writings of married women, their husbands joining, and they being above the age of eighteen years, are placed on the same footing as those of *femes sole,* and they may be reformed for mistakes therein.

4. DEEDS OF MARRIED WOMEN — *of their execution, acknowledgment and proof—since the act of 1869.* Prior to March 27, 1869, it was only by the husband joining in the execution of the deed, and by a certificate showing an acknowledgment in compliance with the statutory requirement, that the wife could convey real estate. It was the acknowledgment in legal form which passed the title. But the act of that date has worked a marked change, and since its passage the acknowledgment has ceased to be the effective means to work a transfer, and the certificate of acknowledgment may be the same as that required in the case of a *feme sole,* and without any acknowledgment the execution of her deed may be proved as at common law, and her deeds and contracts respecting her lands, made with her husband, may be enforced, or reformed for mistake, the same as those of a *feme sole.*

5. REVERSAL AND REMANDMENT—*effect of failing to file remanding order within two years.* Under section 84, chapter 110, of the Revised Statutes, the only effect of not filing in the court below a transcript of the remanding order of the Supreme Court within two years after the reversal of a judgment, is an abandonment of that particular suit, and it is not a bar or abandonment of the cause of action or rights involved in the case which may be asserted in a new suit.

6. EVIDENCE—*opinion as to value of orchard crops.* On a question of the rents and profits derived from the use of an orchard by a defendant, farmers owning and having charge of other orchards in the immediate vicinity, and who are well acquainted with the orchard in question, may testify to what their own orchards produced, and give their opinions from that, and their knowledge of the orchard occupied by the defendant, what it should have produced, and such opinions may be received and considered.

APPEAL from the Appellate Court for the Fourth District;— heard in that court on writ of error to the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. A. W. METCALFE, and Messrs. IRWIN & SPRINGER, for the appellant:

Whatever interest William Stallings had in the leasehold estate in controversy terminated when his wife obtained a divorce from him. Atkins could derive no valid claim under him. Rev. Stat. chap. 41, sec. 14; *Emmert* v. *Hays,* 89 Ill. 19.

After divorce, the wife may recover her lands against the conveyance of her husband, made during coverture. 2 Bishop on Marriage and Divorce, sec. 712; *Krieger* v. *Day,* 2 Pick. 316.

This court has uniformly declined to correct the mistakes of married women in conveyances, or to hold them to the performance of covenants made by them, or to aid the defective acknowledgment of their deeds, and has held deeds made by them, without joinder of their husbands, null and void. *Moulton* v. *Hurd,* 20 Ill. 137; *Russell* v. *Rumsey,* 35 id. 362; *Rogers* v. *Higgins,* 48 id. 212; *Hutchins* v. *Hugguins,* 59 Ill. 29; *Morrison* v. *Brown,* 83 id. 562; *Trustees* v. *Davidson,* 65 id. 125; *Bressler* v. *Kent,* 61 id. 427.

A court of equity has not jurisdiction to correct the mistake in the levy and sale. The lease is not the foundation of Atkins' rights, but the levy. We are not amenable to a court of equity on account of the mistake of the sheriff or plaintiff in the execution. For a mistake in a levy or sheriff's deed the remedy is at law. *Puterbaugh* v. *Elliott,* 22 Ill. 157.

Purchasers at execution sale take *caveat emptor,* and if they purchase under a void levy, take nothing.

Messrs. HAPPY & TRAVOUS, for the appellee:

Since the passage of the act of March 27, 1869, the acknowledgment of the married woman of her deed with her husband ceased to be the effective means to work the transfer of title. By that act her execution and acknowledgment of deeds were placed the same as though she were sole. So,

also, from that time forth, her contract in writing, made jointly with her husband for the disposition of her lands, became binding upon her, and might have been enforced in a court of chancery, and she held to a specific performance of the same. *Hogan* v. *Hogan,* 89 Ill. 427; *Stiles* v. *Probst,* 69 id. 382; *Terry* v. *Eureka College,* 70 id. 236.

That the mistake in the deed of a married woman may be corrected, since the act of 1869, before referred to, and her contracts relative to her separate property be specifically enforced in equity, has been decided in the cases of *Knox* v. *Brady,* 74 Ill. 476, *Edwards* v. *Schoeneman,* 104 id. 278, and *Hogan* v. *Hogan,* 89 id. 427.

The levy and sale by the sheriff were sufficient to convey to Atkins the legal and equitable rights of Allen Stallings in the leasehold estate. Atkins purchased whatever rights Allen Stallings had in the premises. If the latter could have invoked the aid of a court of chancery to correct the mistake before Atkins purchased, the former may do so now. *Foster et al.* v. *Clark,* 79 Ill. 225; *DeRevier* v. *Cantillon,* 4 Johns. Ch. 85; *Bartlett* v. *Judd,* 23 Barb. 262.

The neglect to file the remanding order within two years after the reversal was only an abandonment of that particular action, and not a bar to or abandonment of all rights involved in the case.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

The bill in chancery in this case, filed on the 9th day of March, 1876, alleges that Rebecca Stallings, on the 2d day of August, 1870, was the owner of certain described real estate, situate in Madison county, in this State, and on that day she, together with her husband, William Stallings, leased said real estate to Allen Stallings, for ten years, from March 1, 1871, at a certain rent; that there was a mistake in the description of the land in the lease; that the lessee took

possession of the land under the lease; that on the 9th day of January, 1872, Rebecca Stallings died, leaving a will, whereby she devised the land to William T. Emmert, and appointed Charles Harward her executor; that immediately after her death William T. Emmert, who was then a minor, together with his father, William Emmert, and said Harward, took possession of said real estate by force, and tore down and carried away a building thereon that Allen Stallings was in possession of under the lease, and have had possession of such real estate ever since; that on the 18th of March, 1872, William Stallings assigned to the complainant, Amos Atkins, all his (William Stallings') interest in the rents accruing to him by virtue of the lease; that at the May term, 1870, of the Madison county circuit court, the complainant recovered a judgment against William Stallings and Allen Stallings for $1671.72, and costs, and that their interest in said leasehold estate was sold, under an execution issued on said judgment, to the complainant, and that on the 6th day of December, 1875, he received a sheriff's deed therefor; that in making the levy, sale and deed, the same mistake as to description was made as in the lease; that by virtue of the premises the complainant has become the owner of the interest of William Stallings in the rents, and of all the rights which Allen Stallings had in the property. The bill prays for a correction of the mistake, an accounting for the rents and profits, and that complainant may recover his interest and be put in possession thereof as assignee of Allen Stallings. Answer was filed denying the allegations of the bill, proofs taken, and upon final hearing the circuit court decreed in complainant's favor a correction of the mistake in the lease, levy, advertisement of sale, and sheriff's deed, and a recovery of $1640 for rents and profits. On appeal to the Appellate Court for the Fourth District the decree was affirmed, and William P. Bradshaw, the administrator of William T. Emmert, deceased, appealed to this court.

It is contended that a court of equity has no jurisdiction to correct a mistake in a sheriff's levy, certificate of sale and deed, and *Puterbaugh* v. *Elliott et al.* 22 Ill. 157, is referred to as in support of the position. That was the case of a bill filed to correct a mistake made by a sheriff in the description of premises in the indorsement of the levy on the execution and in the certificate of sale, and it was held that there was an adequate remedy at law; that the relief asked could have been obtained, on motion, in the court from which the execution issued, for an amendment of the levy indorsed, and of the certificate of sale, and that a court of equity would not take jurisdiction. But in *Foster et al.* v. *Clark,* 79 Ill. 225, where, on the sale of land under a decree of foreclosure of a mortgage, there was a mistake in the certificate of sale and deed made by the master in chancery, it was decided that a court of chancery had power to correct the mistake upon a bill filed by the purchaser for that purpose, and that such correction should be made, citing in support of the decision *De Revier* v. *Cantillon,* 4 Johns. Ch. 85; *Bartlett* v. *Judd,* 23 Barb. 262.

*Puterbaugh* v. *Elliott* was distinguished in its being for the correction of mistake only in the indorsement of levy and the certificate of sale,—that case of *Foster* v. *Clark* was for the correction of a mistake in the levy, certificate of sale, and also in the deed which the master in chancery had made, and it was held that although the mistake in the certificate of sale before a deed was made might have been corrected on motion, that would not have been the proper mode for the reformation of the deed. The indorsement of levy on the execution in the present case is not that the land described, merely, or the debtor's interest in it, was levied upon, but it was "levied on the leasehold interest of Allen Stallings, one of the defendants in and to the following described property heretofore leased to the said Allen Stallings by Rebecca Stallings and William Stallings, her husband." This same description

appears in the notice of sale and certificate of sale, and it is the leasehold of the property which the deed mentions as being conveyed. What was levied on and sold, then, was the leasehold interest of Allen Stallings, under a lease from Rebecca Stallings and William Stallings to him. What that leasehold interest was, was entirely clear and certain. If in drawing the lease there was a mistake made in describing the property, the lessee would have a clear equity against the lessors to have the mistake corrected, and the complainant, as the purchaser under execution of the lessee's interest, became entitled to all the latter's rights in the land, legal and equitable, and had the same equity against the lessors to have the mistake corrected that the lessee himself had before the sale; and it being the leasehold interest which was levied on and sold by the sheriff, we do not see why there is not the same equity, with respect to him, for the correction of the mistake in the deed, so that complainant should have thereunder what there is no doubt he purchased.

The land was owned by Rebecca Stallings in her own right, it having come to her by inheritance. The lease was not acknowledged. It is therefore claimed to be invalid against her, she being at the time a married woman,—and it is urged that a court will not correct the mistakes of a married woman in a conveyance. As sustaining these positions, decisions of this court are cited, made under the law as it formerly was. Prior to March 27, 1869, it was only by the husband joining in the execution of the deed, and by a certificate showing an acknowledgment in compliance with the statutory requirement, that the wife could convey real estate. It was the acknowledgment of the married woman in the mode prescribed which was the operative act to pass the title, and this court refused to reform mistakes in deeds made by married women for a conveyance of their lands, as also to enforce their contracts for the conveyance of their real estate, upon the ground that their deeds, to be effectual, must be

acknowledged freely and voluntarily, and in the mode prescribed by the statute. But the act of March 27, 1869, provided that any *feme covert*, being above the age of eighteen years, joining with her husband in the execution of any deed, mortgage, conveyance, power of attorney, or other writing of or relating to the sale, conveyance or other disposition of lands or real estate, should be bound and concluded by the same, in respect to her right, title, claim, interest or dower in such estate, as if she were sole and of full age; and the acknowledgment or proof of such deed, mortgage, conveyance, power of attorney, or other writing, might be the same as if she were sole. Of this act this court, in *Hogan* v. *Hogan*, 89 Ill. 431, said: "This statutory enactment worked a marked change in the law. Thereafter the acknowledgment ceased to be the effective means to work the transfer of title. The certificate of her acknowledgment might thenceforth have been the same as that required in the case of a *feme sole;* and without any acknowledgment whatever, proof of her execution of a conveyance might have been made as at common law. So, also, from that time forth, her contract in writing, made jointly with her husband, for the disposition of her lands, became binding upon her, and might have been enforced in a court of chancery, and she compelled to a specific performance of the same." And so, too, for the same reason, the deed of a married woman may be reformed the same as one of a woman unmarried. (*Knox* v. *Brady*, 74 Ill. 476; *Edwards* v. *Schoeneman*, 104 id. 278.) Hence the decisions cited, made under the law as it stood prior to March 27, 1869, have no application under the law as changed by the act of that date.

It is set up that the execution of the lease by Rebecca Stallings was obtained by duress. The lease bears date August 2, 1870. On the 21st of September, 1870, Rebecca Stallings filed a bill against her husband, William Stallings, for a divorce, on the ground of extreme and repeated cruelty,

and a decree of divorce was granted her. The proof shows a difficulty between them, and the doing some acts of physical violence upon the person of Rebecca Stallings by her husband, William Stallings, recently before the making of the lease, which had respect, however, to another matter, and had no connection whatever with the making of the lease. The land leased was one hundred and seventy-six acres, for ten years, for the yearly rent of seven dollars per acre,—one-half of the rents to be paid to Rebecca Stallings, and the other half to William Stallings. There would not appear to be much reason of love and affection for the making of the settlement of one-half of these rents by the wife upon the husband. Yet, taking the whole proof together, it appears to show that the lease was executed by Mrs. Stallings freely and voluntarily.

Mrs. Stallings had made a will of this land, and after her death her legal heirs filed a bill to set the will aside. Atkins, the complainant, was made a party to that suit, and he set up in his answer this lease, and his purchase of the leasehold interest under execution. The circuit court sustained exceptions to his answer, and decreed that the lease was void. On appeal to the Supreme Court, this court, at its June term, 1877, reversed that decree for error in sustaining the exceptions to Atkins' answer, and remanded the cause, but the transcript of the remanding order was not filed in the court below until November 26, 1883, at the hearing of this suit. As the statute provides that if neither party to a cause which is remanded by the Supreme Court shall file a transcript of the remanding order in the court from which the cause was removed, within two years from the time of the making of the final order of reversal, the cause shall be considered as abandoned, and no further action shall be had therein, (Rev. Stat. chap. 110, sec. 84,) it is insisted that the failure to file the remanding order within the time prescribed is a bar to the maintenance of this suit. There is clearly nothing in

this point. All the effect of not filing the transcript of the remanding order within the time is, that it is an abandonment of that particular case, and not a bar or abandonment of the rights involved in the case.

It is insisted the decree, as to rents and profits, is not sustained by the evidence in the respect of the amount found due. According to the testimony of the defendant, William T. Emmert, it would not be. It is said the testimony of the other witnesses should not be relied upon, it being but of opinions of the profits that were received from the land, and not knowledge of what actually was received. The inquiry was mostly as to what was received from the orchard. The statement of the defendant, William T. Emmert, was, that he actually received but a small amount from the orchard,—very much less than the sum decreed. The other witnesses were farmers who owned and had charge of orchards in the immediate vicinity of the Stallings orchard, and some of them were well acquainted with the latter orchard. They gave testimony as to what their own orchards produced, and their opinions from that, and their knowledge of the Stalling orchard,—what it should have produced, and what was the value of the crops of apples from 1875 to 1881, when the term expired. Their opinions as to the value of the crops received would justify the finding of a larger sum than was decreed. These opinions, we think, were entitled to be received and weighed as evidence. Upon such a question of mere fact, where the evidence is conflicting, we are not disposed to disturb the decree where it is not more manifestly against the evidence than we find it to be here.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*