44706.  CONNECTICUT GENERAL LIFE INSURANCE COMPANY v. BLACKMER.

ARGUED SEPTEMBER 9, 1969—DECIDED FEBRUARY 6, 1970.

*Bryan, Carter, Ansley & Smith, Henry M. Quillian, Jr.,* for appellant.

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, William A. Burnham,* for appellee.

JORDAN, Presiding Judge. 1. The evidence demands a finding that Blackmer at the time of his discharge from his employment was not disabled so as to come under the continuation of insurance (premium waiver) provisions of the group policy.

It is undisputed that up to and including the final day of his employment he was working regularly and performing his duties in a manner to meet at least minimum satisfactory standards of his employer, and that he was permanently discharged solely on account of a reduction in force for budgetary reasons. To qualify under the continuation of insurance (premium waiver) provisions the employee must, while insured, "become totally disabled from bodily injury or disease which wholly and continuously prevents such employee from engaging in any occupation for wage or profit."

The policy involved in Travelers Ins. Co. v. Berlin, 185 Md. 404 (45 A2d 90) defined total disability as "wholly disabled by bodily injuries or disease and will be continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit." The Maryland Court of Appeals, viewing this definition in the light of previous holdings, stated "that the disability need only be such as to render the claimant unable to perform the substantial and material acts of his own or some other business or occupation in the usual or customary way." P. 414. Even if this is somewhat more liberal than the literal language of the contract it does not include the present situation, for Blackmer up to and at the time of his discharge was in fact performing all of the duties of his occupation in a satisfactory manner.

This distinction was recognized by the Maryland Court of Appeals in Lavenstein v. Travelers Ins. Co., 201 Md. 361, 367 (93 A2d 745) in which the court noted that the statement of a doctor that on a certain date he advised against working, be-

cause in his opinion the insured was at that time completely incapacitated, could "hardly stand in the face of the testimony that he [the insured] did continue as an active partner" thereafter for several months, the date total disability commenced being material to a decision in that case.

Similarly, in Georgia the Supreme Court, in affirming the direction of a verdict for the insurance company in a case involving a similar definition of total disability, and facts somewhat similar to the present case, stressed the fact that the insured, even though afflicted with a disease, continued to work in his occupation. *Cato v. Aetna Life Ins. Co.*, 164 Ga. 392 (4-6) (138 SE 787). In a later case the Court of Appeals emphasized "that the insured did not abandon his work *because of his disability*, and, under the facts of the case and the foregoing rulings in the *Cato* case, the verdict for the defendant insurance company was demanded." *Blackman v. Travelers Ins. Co.*, 49 Ga. App. 137 (3) (174 SE 384).

Authorities are collected and discussed in 24 ALR3d 8, in which the annotator recognized, as a general rule (p. 21), that one "who continues or resumes working subsequently to the commencement of his alleged disability is precluded from recovering total or permanent disability benefits whenever he substantially performs the important and material duties of his occupation." No case comes to our attention in Maryland or Georgia where the courts have resolved the matter one way or the other on the basis that the person continued to work in utter ignorance of the true state of his health, as may have been the situation here shown, but there is a split of authority in other jurisdictions. See p. 91 et seq., § 9, of the annotation, supra. In our opinion, it is the fact that Blackmer performed all the duties of his occupation, and not the presence or absence of any knowledge of the true state of his health, which demands a finding that he was not totally disabled, as defined in the policy, up to and including the date of his discharge.

2. The provisions of the insurance policy, in language necessary to meet the requirements of Maryland law, require a determination as a matter of law that the continuation of insurance provisions (premium waiver) were not operative after

the provisions regarding termination of insurance and conversion became effective.

The Maryland law provides, with resepect to group life insurance, that if the insurance ceases because of termination of employment, the person shall be entitled to an individual life insurance policy for an amount not in excess of that which ceases "without disability or other supplementary benefits" if he applies and pays a premium therefor within 31 days after termination, and further, that if he dies during this 31-day period, before the effective date an individual policy is effective, and regardless of whether he applies or pays a premium for conversion, "the amount of life insurance which he would have been entitled to have issued to him under such individual policy shall be payable as a claim under the group policy." Maryland Code Ann., Art. 48A, §§ 434, 436.

Under the policy here involved insurance ceases on termination of employment, defined further as termination of active service except "on account of sickness or injury" or "on account of temporary layoff or leave of absence" and these provisions are followed by provisions incorporating the Maryland law, supra, with respect to the benefit payable after termination and the conversion privilege, under which the company agrees to issue an individual policy without disability benefits.

Quite clearly the protection envisioned by the law and under the policy is to provide the insured with a benefit during the 31 days allowed for conversion which is equated to the protection to which he is entitled upon conversion, which excludes disability benefits. To hold otherwise would in effect declare that the whole policy remains in effect for 31 days after termination, a result obviously never intended.

3. Applying the provisions of the policy regarding termination of insurance upon termination of employment as set forth above, the undisputed evidence of the permanent discharge from employment because of a reduction in force, and not on account of sickness or injury, demands a finding that the insurance coverage, other than the benefit after termination of insurance and the conversion privilege, ceased on the date of discharge from employment. As there is no dispute that death occurred at a

date more than 31 days after discharge from employment and that Blackmer did not exercise his conversion privilege, the evidence also demands a finding that all coverage had ceased to exist at the time of death.

4. In view of the foregoing the insurance company was entitled to summary judgment.

*Judgment reversed. Hall and Whitman, JJ., concur.*